UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:
:
:
TOBACCO ROAD ASSOCIATES, L.P., : Case No. 06-20469REF
  *Debtor* :
:

## MEMORANDUM OPINION IN SUPPORT OF BENCH AND WRITTEN ORDERS DATED MAY 9, 2006, DENYING REQUEST TO RESCIND OR EXTEND THE HEARING DATE OF MAY 8, 2006

Following nine hours of testimony and exhibits presented from 2:05[1] in the afternoon through 11:00 at night on Monday, May 9, 2006, and following an hour and a half of oral argument Tuesday afternoon, May 9, 2006, from 4:15[2] to 5:40, and following my preparation, and reading into the record, of my bench order dismissing this involuntary bankruptcy proceeding on Tuesday evening May 9, 2006 from 5:40 to 7:45, I read into the record my bench order denying the petitioning creditors' motion, filed on May 2, 2006, requesting that I rescind or extend the May 8, 2006, hearing date on the motion to dismiss.[3] I noted in my bench order that a written order would follow and I prepared and signed the written order denying the motion later that Tuesday night, May 9, 2006. Petitioning creditors and another party purporting to be a party in interest have appealed my orders of May 8, May 9, and May 16, 2006, and all other orders in

---

1. The hearing was scheduled to begin at 1:45 p.m., but counsel for the petitioning creditors was 20 minutes late to Court.

2. Oral argument was scheduled to begin at 4:00, but counsel for the petitioning creditors was again 15 minutes late to Court.

3. The motion is actually captioned, Motion of Debtor To Rescind or Extend Expedited Hearing of May 8, 2006, with Request for Expedited Consideration (the "Motion"). I granted the request for expedited consideration and heard the Motion immediately prior to the time of the hearing to dismiss on May 8. Among many procedural errors committed by the attorneys in the Koresko Law Firm (together, "Koresko"), the law firm representing both the petitioning creditors in this involuntary and the debtor in the companion voluntary case, is their propensity to describe their motions in the docket as something entirely different from what they actually are. For instance, in this matter, the above name of the Motion is utterly absent in the description Koresko uses for the automated docket entry, which is: "Expedited Motion To Reconsider." Again, this practice of wholly inconsistent descriptions in the docket of documents filed by Koresko runs throughout this matter.

this case.[4]  The same appealing parties filed identical appeals in the companion case, 06-20470, which is a voluntary bankruptcy filed the same day by the same attorney, Koresko. This opinion is written in support of my bench and written orders denying the Motion of petitioning creditors to rescind or extend the May 8 hearing.

I explained in my bench order and in the written order, both denying the Motion, that the Motion was moot because I had entered my decision on the merits of the motion to dismiss. I add two supplemental reasons for the denial of the Motion. First, I reject the movants' attempt to claim that they were not able to obtain evidence that they needed. Second, I regard the Motion as having been withdrawn.

This matter started with the simultaneous filing, on April 17, 2006, of both this involuntary proceeding and the voluntary Chapter 11 of debtor, filed by Koresko with Gary Wilson (one of the petitioning creditors) authorizing them to file on behalf of the debtor. On April 26, the true Tobacco Road, authorized by the persons who truly control Tobacco Road, filed motions to dismiss both the involuntary and voluntary cases. On April 27, 2006, I set the hearing on the motions to dismiss for May 8, 2006. The very day of my order setting the May 8 hearing, Koresko contacted me directly, without filing appropriate papers, asking me to undo the order setting the May 8 date. Despite the procedural inadequacies of the April 27 faxed request, I addressed it and denied it. It is therefore quite clear that Koresko knew, on Thursday, April 27, 2006, that they faced a hearing on May 8, which was then eleven days away.

---

4. The descriptions of the matters appealed in the three Notices of Appeal are: (1.) Appeal of petitioning creditors - appeal "from the Order of U.S. Bankruptcy Judge Richard E. Fehling, entered on May 9, 2006, denying the Motion To Rescind or Extend the Expedited Hearing;" (2.) appeal of Stinson Reliant Corporation - "appeals the orders of this court made on or before this date [May 19, 2006], including without limitation the orders of May 9 and 16, 2006;" and (3.) appeal of Gary Wilson (who is one of the petitioning creditors) - "appeals the orders of this court made on or before this date [May 19, 2006], including without limitation the orders of May 8, 9, and 16, 2006."

I must make three observations in passing. First, the text of each of the second and third appeals means that all orders prior to May 19, 2006, are appealed, which includes certain orders I entered at the request of the petitioning creditors setting expedited hearings. Second, in this same vein, the only order entered in this case on May 16, 2006, was to grant the request of Stinson Reliant Corporation for an expedited hearing on its request to intervene generally into everything pending in this case. Third, I cannot see how Stinson Reliant Corporation could have any standing to file such an appeal, although the issue of standing is for the District Court to address and decide.

At the May 8 hearing I heard argument from Koresko in support of the Motion, primarily relating to their inability to adequately prepare for the hearing. May 8 Transcript, pages 21 - 42. When pressed, however, their description of what they had actually tried to do fell flat. They failed repeatedly to give a consistent, persuasive rationale for why they needed the witnesses and documents that they said they needed. They offered nothing in the way of exhibits showing attempted subpoenas or showing that subpoenaed witnesses failed to appear. They suggested vaguely that they had tried on Thursday and Friday, May 4 and 5, 2006, to subpoena a number of witnesses and documents, but did not identify the witnesses or when they had served the subpoenas. They stated that none of their subpoenaed witnesses had appeared, May 8 Transcript, page 22, lines 18 - 22, but four subpoenaed witnesses actually testified and a fifth subpoenaed witness (whom they did not call) was present in court.[5]

Koresko did establish that they had attempted to serve the persons who actually control Tobacco Road Associates, L.P. ("Tobacco Road") `by faxing/mailing their subpoenas to the Hartman Underhill law firm, May 8 Transcript, page 239, line 4, through page 246, line 10, which method of service is insufficient. See Fed. R. Civ. P., Rule 45(b), which is made applicable to bankruptcy matters by Fed. R. Bankr. P., Rule 9016; see also Parker v. John Doe #1, No. Civ. A. 02-7215, 2002 WL 32107937, at *2 (E.D. Pa., Nov. 21, 2002). Moreover, the one witness who did appear in response to a subpoena that Koresko had issued had no documents that supported the petitioning creditors and his testimony weighed entirely against them.[6] The clear conclusion was that Koresko had gone a full week without attempting to issue subpoenas to support the case of the petitioning creditors, issued a flurry of subpoenas at the last second, and

---

5. Attorney Timothy Sullivan, Mr. Thomas V. Spano, Mr. Frank Phillips, and Mr. James Muir appeared as witnesses and another banker was in Court but was not called. Koresko had subpoenaed Mr. Muir and the other banker, both from Susquehanna Bank, as witnesses, had them in the Courtroom from 2:00 p.m. to 8:00 p.m., and then called only Mr. Muir, having had the other banker waste his time without being called because Koresko did not need him. May 8 Transcript, page 220, lines 9 - 25.

6. The testimony of James Muir, a banker with Susquehanna Bank, can be found in the May 8 Transcript, pages 204 - 219.

3

then tried to claim that they had not had sufficient time to make their case.[7] Incredibly, however, one of the bits of evidence that Koresko says they needed was evidence from the true Tobacco Road that their petitioning creditors were actually owed something by Tobacco Road. They claim that their preparation of the case suffered because they did not get documents from Tobacco Road at the same time that two of the three petitioning creditors were told strategically not to be present in Court. May 8 Transcript, page 309, lines 19 - 25. If the petitioning creditors really wanted to prosecute their involuntary bankruptcy, they should have attended the May 8 hearing themselves.[8]

In addition, Koresko filed both the voluntary and involuntary bankruptcies on April 17, 2006, and must have known that he would face a challenge based upon lack of authority to do so. I would expect that Koresko would have made quite certain to have sufficient information and back-up support, at the time of the filings, to support the factual allegations related to and required by filing two such bankruptcy proceedings as mandated by Section 303(i) and Fed. R. Bankr. P., Rule 9011.

One more issue that relates to the purported inability of Koresko to obtain documents that might support their position bears mentioning. Throughout the hearing, Mr. Wilson referred to memos that he had from August 2004 and July 13, 2005, that supported his arguments that he controlled TRA, LP. But Mr. Wilson did not bring any such documents to court. My findings on this issue can be found in the May 9 Transcript Transcripts, page 66, line 18, through page 67, line 12; page 77, line 22, through page 78, line 7; page 79, lines 4 - 20; and page 88, line 19,

---

7. In one telling exchange, Koresko agreed, upon my questioning that they knew about the order setting the May 8 hearing on Friday, April 27, but did nothing to learn more about the hearing and what might be at issue or required until the following week, knowing that they had substantial work to do in other aspects of the case early in the following week. May 8 Transcript, page 243, lines 4 through page 244, line 6.

8. We find it incredible that Koresko argued to me, May 9 Transcript, page 27, lines 3-4, that the Hartman Underhill side of this dispute erred in not subpoenaing the petitioning creditors Kit Gee and Richard Wilson. This argument would make Lewis Carroll proud with its Through the Looking Glass bravado. The petitioning creditors, who swore that they were owed money by debtor, who put an apparently viable, on-going business into bankruptcy, and who face personal consequences/sanctions under Section 303(i) of the Bankruptcy Code if the motion to dismiss were granted, had no reason to attend the May 8 hearing and it is the other side's obligation to have forced them to attend. We were stunned by this argument.

through page 89, line 2. I regard their failure to bring to court potentially helpful documents that they do control as militating strongly against their complaint that they could not get documents that they did not control.

But second, the Motion is deemed to have been withdrawn. At the beginning of the May 8 hearing, I heard arguments for and against Koresko's need for additional time. May 8 Transcript, pages 21 - 42. I declared from the bench on May 8 that the Motion was taken under advisement and I proceeded with the evidentiary hearing. May 8 Transcript, page 42, lines 13 - 14. At the end of the May 8 hearing, I set oral arguments for the next day at 4:00 p.m. On May 9, beginning at 4:15 (Koresko was late for the second day in a row[9]), I heard argument from both Koresko and the Hartman Underhill law firm until about 5:40 p.m. Through their entire presentation, in four separate arguments, Koresko did not mention any need whatsoever for additional time to defend against the motion to dismiss. They argued vigorously that they had presented clear and convincing proof that both the involuntary and voluntary proceedings were entirely viable and proper and should not be dismissed. May 9 Transcript, pages 9-19, 26-46, 50-51, and 104-106.

After I had issued my lengthy bench order granting the motion to dismiss, Koresko said nothing about needing more time and said that nothing else was at issue. I had actually closed the record of the proceeding when I recalled that the Motion had been taken under advisement the prior day. May 9 Transcript, page 106, lines 3-17. I therefore re-opened the record and denied the Motion as moot, without further noting that, by not arguing it to me, Koresko had effectively withdrawn it from my consideration.

---

9. See fns. 1 and 2, above.

5

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:                                              :
                                                    :
TOBACCO ROAD ASSOCIATES, L.P.,                      :   Case No. 06-20469REF
    *Debtor*                                          :
                                                    :

## ORDER

AND NOW, this **30** day of May, 2006, the preceding opinion is adopted as a supplemental opinion supporting my bench and written orders, dated May 9, 2006, denying the Motion of Debtor To Rescind or Extend Expedited Hearing of May 8, 2006, with Request for Expedited Consideration. See L.B.R. 8001-1(b).

BY THE COURT

_____
RICHARD E. FEHLING
U.S. Bankruptcy Judge